**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | **Chapter 11** |
| | : | |
| **YC ATLANTA HOTEL LLC,** | : | **Case No.  21-50964-bem** |
| | : | |
| **Debtor.** | : | |
| | : | |
| | : | |
| **YC ATLANTA HOTEL LLC,** | : | |
| | : | |
| **Movant,** | : | |
| | : | **Contested Matter** |
| **vs.** | : | |
| | : | |
| **ACCESS POINT FINANCIAL LLC and** | : | |
| **UNITED STATES SMALL BUSINESS** | : | |
| **ADMINISTRATION,** | : | |
| | : | |
| **Respondents.** | : | |
| | : | |

**MOTION OF DEBTOR-IN-POSSESSION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE; (B) REQUESTING AN EXPEDITED INTERIM HEARING THEREON; AND (C) SCHEDULING A FINAL HEARING ON THE VALUATION AND USE OF CASH COLLATERAL**

COMES NOW YC Atlanta Hotel LLC, Debtor and Debtor-In-Possession in the above-captioned case (the "**Debtor**"), and files this motion seeking interim and final orders valuing and authorizing the Debtor to use cash collateral on the provision or payment of adequate protection, as necessary, to creditors with alleged interests therein, respectfully showing:

**Preliminary Statement**

1.      The Debtor operates a Clarion Inn in College Park, Georgia.

2.      The Debtor believes that it can meet its near-term cash requirements through the use of cash on hand and the use of cash collateral. Most of the Debtor's cash needs are met by

1

collection of revenues from the rental of rooms at the hotel. Such room rentals are the purported

cash collateral of one or both of the Respondents. Without the use of cash collateral, the Debtor

will be unable to manage and pay the expenses required for the continued operation of the hotel.

Therefore, the Debtor is requesting both interim and final orders authorizing the use of cash

collateral.

3.        Accordingly, the Debtor seeks (i) pursuant to Sections 361, 362, 363, and 552 of

the Bankruptcy Code an order (the "**Interim Cash Collateral Order**") (A) authorizing its use of

cash collateral on an interim basis as described in more detail below and (B) scheduling a final

hearing to consider valuation and the Debtor's use of cash collateral (the "**Final Cash Collateral**

**Hearing**") and the entry of a final order authorizing the use of cash collateral on a permanent

basis.

### Background

4.        The Debtor filed its voluntary petition for relief under Chapter 11 of the

Bankruptcy Code on February 3, 2021 (the "**Petition Date**").

5.        The Debtor continues to operate its business and manage its property as debtor-in-

possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.        No creditor's committee, trustee, or examiner has been appointed.

7.        The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the requested relief are Sections

361, 362, 363, 506, and 552 of the Bankruptcy Code.

8.        Respondent Access Point Financial LLC ("**Access Point**") is a Delaware limited

liability company registered to do business in Georgia with its principal office located at 1

Ravinia Drive, 9th Floor, Atlanta, Georgia 30346. Access Point may be served on Luther C.

Curtis, its Registered Agent, at 1180 West Peachtree Street NW, Atlanta, Georgia 30309. On

information and belief, Access Point may also be served on its counsel at Alexandra C. Nelson,

Thompson Hine, LLP, Two Alliance Center, 3560 Lenox Road, Suite 1600, Atlanta, Georgia

30326-4266.

9.      Respondent United States Small Business Administration (the "**SBA**") may be

served at (i) U.S. Small Business Administration, c/o Bankruptcy Department, 233 Peachtree

Street, N.E., Suite 1900, Atlanta, Georgia 30303-1508, (ii) U.S. Attorney General, c/o Monty

Wilkinson, Acting Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue,

NW, Washington, D.C. 20530-0001; and (iii) U.S. Attorney - Northern District of Georgia, c/o

Civil Process Clerk, Richard B. Russell Federal Building, 75 Ted Turner Dr. SW - Suite 600,

Atlanta, Georgia 30303-3309.

10.      Access Point and the SBA, each a "**Respondent**," are collectively referred to

herein as the "**Respondents**."

**Debtor's Business**

**A.      Operations and Management**

11.      Since late 2019, the Debtor has operated the Clarion Inn located at 1419 Virginia

Avenue, College Park, Georgia 30337.

12.      The Clarion brand is a top brand in the "Midscale" line of hotels offered by

Choice Hotels.

13.      The hotel is a six-story, interior corridor hotel, with 243 guest rooms. It features

guest laundry, a business center and lobby, and a breakfast area. Additionally, a restaurant is

operated on the real property. The hotel is located near Hartsfield-Jackson Airport in Atlanta, Georgia, right off of I-85 and the North Outer Loop on Virginia Avenue.

14.     The primary source of revenue for the Debtor is guest room revenues.

**B.     Certain Pre-Petition Secured Indebtedness**

15.     Nothing contained herein, including all summaries of indebtedness owed by the Debtor to, and collateral held by, Respondents, shall be construed as an admission by the Debtor of such indebtedness (and related default), collateralization, or collateral value.

16.     On information and belief, as of the Petition Date, Respondents allege that the Debtor is indebted to Respondents in the corresponding amounts:

(a)     Access Point                                    $10,223,961.67

(b)     SBA                                             Unknown[1]

Such indebtedness may be secured by property owned by the Debtor. Respondents may also have an assignment of rents on such property as well as a security interest in all accounts of the Debtor, such that the accounts receivables generated by such property may constitute "cash collateral" of the Respondents.

17.     Specifically, Access Point will likely assert that its claim is secured by, among other things, "cash collateral" of Debtor in the form of revenues from the rental of hotel rooms, pursuant to (i) a Deed to Secure Debt and Security Agreement executed by the Debtor in favor of Access Point on or about November 15, 2019 and recorded with the Fulton County Clerk of Superior Court at Deed Book 60817, Pages 281-328; (ii) an Assignment of Leases and Rents executed by the Debtor in favor of Access Point on or about November 15, 2019 and recorded with the Fulton County Clerk of Superior Court at Deed Book 60817, Pages 313-322; and (iii) various filed UCC Financing Statements.

---

[1] Debtor is investigating why the SBA has a UCC dated June 11, 2020.

18.      The SBA may assert that its claim is secured by, among others, "cash collateral" pursuant to a UCC Financing Statement recorded on or about June 11, 2020 and bearing UCC File No. 038-2020-019549.

19.      Although the Debtor is still investigating the value of the hotel and cash collateral, it believes that, even if the SBA has an interest in cash collateral, the SBA is junior behind Access Financial's interest in the real property and cash collateral and completely unsecured on account of that senior interest of Access.

20.      All of the collateral allegedly securing the Debtor's obligations to its lenders is now property of Debtor's bankruptcy estate and subject to the exclusive jurisdiction of this Court.

### Relief Requested and Basis for Relief

21.      As noted above, by this Motion, the Debtor respectfully request entry of an interim order pursuant to Sections 361, 362, 363, 506, and 552 of the Bankruptcy Code (A) authorizing its use of Cash Collateral on an interim basis and (B) scheduling the Final Cash Collateral Hearing to consider the entry of a final order valuing and authorizing the Debtor's permanent use of Cash Collateral.

### A.    The Use of Cash Collateral Should Be Approved

22.      As further described herein, the Debtor requires the immediate use of Cash Collateral, wherever located, to continue operations and preserve the value of the Debtor's assets, including its hotel. Specifically, the Debtor seeks to use Cash Collateral to (a) maintain its operations consistent with pre-petition practices and (b) pay disbursements more fully described in a Budget attached on **Exhibit A**.[2] The Budget reflects the Debtor's projected revenues and

---

[2] The Debtor will supplement this Motion with a copy of the Budget when it is finalized and, in all events, will serve it on the Respondents prior to any interim hearing on this Motion.

expenses for the upcoming 90 days (or longer) period. The Debtor reserves the right to amend the Budget up to the time of any Interim or Final Hearing on this Motion.

23.     The Debtor requires the use of its room rental revenues, which rentals may constitute Respondents' Cash Collateral. Absent the Debtor's use of the Cash Collateral, the Debtor will not have available sources of working capital and financing to carry on the operation of its business as a going concern. In the absence of the use of Cash Collateral, the continued operation of the Debtor's business, even for a limited period of time, would not be possible, and serious and irreparable harm to the Debtor and its estate would occur. The use of Cash Collateral is critical to preserve and maintain the going concern value of the Debtor and will enhance the prospects of its reorganization.

24.     The Debtor has not been able to, at this early stage in the case, obtain consent from Respondents on the use of Cash Collateral on terms and conditions which the Debtor, in its sound business judgment, deems in the best interest of its estate and other creditors. If, following the filing of this Motion, the Debtor is unable to reach consensual agreements with Respondents regarding the Debtor's use of Cash Collateral, then the Debtor will request permanent use of Cash Collateral at the Final Cash Collateral Hearing.

**1.      Section 363(c)(2) Authorizes Debtor's Use of Cash Collateral**

25.     Section 363 of the Bankruptcy Code governs the Debtor's use of cash collateral. Under Section 363(c)(2), a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes the use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(a) defines "cash collateral" as follows:

6

[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or

other cash equivalents whenever acquired in which the estate and an entity other

than the estate have an interest and includes the proceeds, products, offspring,

rents, or profits of property and the fees, charges, accounts or other payments for

the use or occupancy of rooms and other public facilities in hotels, motels, or

other lodging properties subject to a security interest as provided in section 552(b)

of this title, whether existing before or after the commencement of a case under

this title.

11 U.S.C. § 363(a).

26.     A debtor's cash "is the life's blood of the business," and the bankruptcy court

must ensure that such life's blood "is available for use, even if to a limited extent." *In re Mickler*,

9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). A debtor may use cash collateral to continue its

operations so long as the interests asserted by affected creditors in such cash are adequately

protected. Thus, courts must balance the protection a debtor seeks to provide with the debtor's

need to use cash in its reorganization effort. *Stein v. U.S. Farmers Home Admin. (In re Stein)*, 19

B.R. 458, 459 (Bankr. E.D. Pa. 1982). In ruling on whether a debtor is adequately protected early

in a case, courts "will generally permit the business operation to continue, at least to the point of

plan formulation, if the debtors make a solid evidentiary showing to support their projections[.]"

*In re Dynaco Corp.*, 162 B.R. 389, 395 (Bankr. D.N.H. 1993).

27.     Consistent with these requirements, courts repeatedly have recognized that the use

of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and,

thus, maximize the value of an estate for all interested parties. *See, e.g.*, *Dynaco*, 162 B.R. at 394

(granting a motion for the use of cash collateral and stating that "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary in order to operate a business"); *Chrysler Credit Corp. v. George Ruggiere Chrysler-Plymouth, Inc. (George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1020 (11th Cir. 1984) (allowing debtor to use cash collateral over secured creditor's objection after noting that "[w]ithout the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated."); *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1399 (10th Cir. 1987) (permitting debtor to use cash collateral to expand operations after finding there was only a low risk that secured creditor's interest would diminish); *In re Stein*, 19 B.R. at 459 (granting cash collateral motion and declaring that access to cash is imperative for a debtor to operate its business). *See also In re Megan-Racine Assocs. Inc.*, 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996) (noting, in connection with motion to approve use of cash collateral, that "[w]hat is important at this juncture in the case in any determination of additional adequate protection is the future stability of the value of the collateral, rather than any particular level at value at any one time since the case was commenced").

28.    Courts have also authorized similar relief in other Chapter 11 cases where, for example, the debtor seeks to use cash collateral to maintain property of the estate. *See*, *e.g.*, *In re Constable Plaza Assocs.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (recognizing that the debtor's use of cash collateral to operate and maintain office building would serve to preserve or enhance the value of the building which, in turn, would protect the collateral covered by the lender's mortgage); *In re 499 W. Warren Street Assocs., Ltd. P'ship.*, 142 B.R. 53, 58 (Bankr. N.D.N.Y. 1992) (allowing the use of cash collateral to maintain property).

29.     Pursuant to Section 552(b)(2), this Court may permit the Debtor to continue to use cash collateral in the form of gross hotel income to pay the expense of the hotel operations expenses, based on the "equities of the case."[3]

30.     The exception for the "equities of the case" expressly empowers this Court to balance the interests of the creditors against other interests, such as the Debtor's possible rehabilitation, the preservation of jobs, and the preservation of the going concern value of the Hotel. *See*, *e.g. United Virginia Bank v. Slab Fork Coal Co.*, 784 F.2d 1188, 1191 (4th Cir. 1986) (Section 552(b) "gives the bankruptcy court considerable latitude"); *In re: Topgallant Group, Inc.,* 1992 WL 12004198 (Bankr. S.D. Ga. 1992).

31.     Further, Section 552(b)(2)'s reference to Section 506(c) further indicates that this Court has discretion to permit the limited use of cash collateral to pay the expenses of the hotel operations. Section 506(c) permits recovery from property held as collateral of the reasonable and necessary costs and expenses of preserving that collateral.

**2.     Debtor's Proposal for Providing Adequate Protection to the Claims of Respondents.**

32.     The standards for authorizing the Debtor to use Cash Collateral are satisfied in this instance because the Debtor's ongoing business operations will adequately protect and preserve the value of any Cash Collateral securing the Debtor's pre-petition obligations and

---

[3]     Section 552(b)(2) provides as follows:

Except as provided in Sections 363, 506(c),  552, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, *except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise*."  (emphasis added).

Respondents will be further adequately protected to the extent that they are entitled to adequate protection by (a) the continued maintenance of the Debtor's hotel (i.e., Respondents' purported collateral), (b) the payment of related post-petition property taxes as and when they come due, and (c) the fact that the market value of such properties as of the Petition Date should not decline while the case is pending and that the Debtor will compensate the Respondents, to the extent required by the Code, should any such decline occur.

33.     Courts have held that secured lenders are adequately protected when cash collateral is used to pay operating expenses of a Chapter 11 debtor. For example, in *In re Stein*, the Bankruptcy Court for the Eastern District of Pennsylvania granted a debtor's request to use cash collateral over the secured creditor's objection. *In re Stein*, 19 B.R. at 458. In that case, the debtor sought to use cash proceeds, from a contract with a third party, for operational costs during the Chapter 11 case. *Id.* at 459. A secured creditor, holding liens on the debtor's collateral and proceeds therefrom, objected to the debtor's request. *Id.* Ruling in the debtor's favor, the court acknowledged two competing concerns: (i) "protecting the holder of a lien on cash collateral against unrestricted use of such collateral" and (ii) "rehabilitating the chapter 11 debtor by allowing it to use the cash collateral where necessary to operate the debtor's business." *Id.* In weighing these two factors, the court first observed that the objecting creditor was under-secured. *Id.* at 460. Nevertheless, the court explained that the debtor's continued operation was the only means by which the creditor's secured position could be enhanced. *Id.* A creditor is not entitled to more protection than it received when making the loan. *Id.* The court concluded that the facts of the case and the "[Bankruptcy] Code's policy favoring rehabilitation" allowed the debtor to utilize the cash proceeds of its operations. *Id.*

34.    Cash is necessary for working capital and capital expenditures, and operating costs and expenses at the outset of, and during, this Chapter 11 case. At least outside the ultimate context of plan confirmation, the Debtor does not have available sources of working capital and financing to carry on the operation of its business without the use of Cash Collateral. The Debtor's ability to maintain business relationships with guests, service providers, and employees is dependent on its ability to continue to operate its property, and Debtor cannot operate its property unless it can fund payments for post-petition services and other operating expenses.

35.    Thus, the use of Cash Collateral is essential to the Debtor's continued viability and the value of its business as a going concern and will enhance the prospects for a successful reorganization of the Debtor. Furthermore, the alternative in this case is, as one court put it, "to force the debtor[] to close down [its] operations and thus doom any effort at reorganization which will hopefully extract the maximum value of the assets involved to the benefit of all classes of creditors and other constituencies involved in this case." *See Dynaco Corp.*, 162 B.R. at 396. Because this result would stand in diametrical opposition to the rehabilitative purpose of Chapter 11, approval of the Debtor's Motion is warranted. *See id.* at 394 (noting that "it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible") (quoting *In re Prime, Inc.*, 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

**3.    Adequate Protection Proposal**

36.    As noted above, a debtor's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. § 363(e). "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361." *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Section 361 of the Bankruptcy Code contains a

non-exhaustive list of acceptable forms of adequate protection, including a cash payment or

periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of

such entity's interest in such property." 11 U.S.C. § 361.

      37.    The determination of adequate protection is a "fact-specific inquiry." *In re*

*Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("Its application is left to the vagaries of

each case . . .") (citation omitted). The focus of the adequate protection requirement is to

preserve the secured creditor's position at the time of the bankruptcy filing and protect the

secured creditor from diminution in the value of its collateral during the reorganization process.

*Id.* at 288 (citation omitted); *In re Beker Indus. Corp.*, 58 B.R. at 736. *See In re WorldCom, Inc.*,

304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the

Bankruptcy Code, which sets forth how adequate protection may be provided under section 363,

makes clear that the purpose is to insure that the secured creditor receives the value for which the

creditor bargained for prior to the debtor's bankruptcy.").

      38.    What constitutes adequate protection must be decided on a case-by-case basis.

*See*, *e.g., MBank Dallas v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)

(citing *Martin v. United States (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985)); *Kimbrough*

*Inv. Co. v. Royal d'Iberville Corp. (In re Royal d'Iberville)*, 10 B.R. 37, 39 (Bankr. S.D. Miss.

1981) ("Opinions as to what is adequate protection must be determined on a case-by-case basis

and opinions will vary greatly from court-to-court because adequate protection is not defined in

the Bankruptcy Code.").

      39.    Importantly, the entitlement to, form of, and amount of adequate protection

should be based on a showing that the use of cash collateral will not cause the value of a secured

creditor's collateral to decrease: "Despite its form, the entitlement to and measure of adequate

protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case . . . . Where a debtor desires to use cash collateral, a court must determine the value of the creditor's interest in the cash collateral and whether the debtor's proposed use of cash collateral would impair that interest, and to what extent adequate protection is required." *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Col. 1995) (internal citations omitted). Moreover, courts should take equitable considerations into account in determining what constitutes adequate protection. *See Dynaco*, 162 B.R. at 394 ("Adequate protection will take many forms, only some of which are set forth in section 361 of the Bankruptcy Code . . . and must be determined based upon equitable considerations arising from the particular facts of each proceeding."); *Stein*, 19 B.R. at 459 ("The equities in each case must be weighed in striking a balance.").

40.     Here, the Debtor proposes to adequately protect Respondents via the following, as may be applicable: (a) continuing to maintain the Debtor's property, including its hotel (i.e., Respondents' purported collateral), including, but not limited to, continuing to pay normal operating expenses, (b) paying post-petition property taxes with respect to such collateral, (c) maintaining insurance on the collateral, and (d) maintaining the Petition Date market value of Respondents' purported real property collateral.

41.     Courts have held that where a debtor seeks to use rents constituting a secured party's cash collateral, adequate protection is available if the debtor will use the rents for maintaining the property. *See Federal Nat. Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204 (N.D. Ill. 1993) ("[T]he required adequate protection of [r]ents is satisfied to the extent the Debtor reinvests the rents in the operation and maintenance of the property because the value of the secured creditor's interest in its collateral will thereby be increased.").

*See also In re Constable Plaza Assocs.*, 125 B.R. at 105 ("debtor's plowing back rents solely for the purpose of maintaining and operating its office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *In re Prichard Plaza Assocs. Ltd. P'ship*, 84 B.R. 289, 302 (Bankr. D. Mass. 1988) (stating that adequate protection, if required, would be satisfied if the debtor applied rents entirely to the operation and maintenance of the property); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 267 (Bankr. C. D. Cal. 1988) (holding that rents could be spent to make repairs or renovations that would increase rent flow even without equity cushion); *In re Western Real Estate Fund, Inc.*, 83 B.R. 52, 54 (Bankr. W. D. Okla.1988) (allowing expenditures of post-petition rent revenues for upkeep).

42.    In summary, Respondents will be adequately protected because the Debtor's use of Cash Collateral will preserve the value of their collateral for the benefit of not only the Debtor but also Respondents by facilitating the Debtor's financial rehabilitation. Given the nature of the Debtor's business, it cannot be disputed that its ability to maximize the value of its assets is inextricably tied to maintaining operations on an uninterrupted basis. If the Debtor does not have access to cash, then it may be forced to shut down operations and the Debtor's assets would be liquidated for significantly less than their fair value. However, with the use of Cash Collateral to conduct the Debtor's business, the Debtor will be able to preserve and protect the value of its assets, including the pre-petition collateral. Therefore, as in *Dynaco Corp.* and *Stein*, there will be no diminution in value of the pre-petition collateral and Respondents will be adequately protected.

**4.    Interim Approval for the Use of Cash Collateral Should Be Granted**

43.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such motion. Similarly, Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition grant, among other things, a motion to use, sell, lease property of the debtor's estate."

44.     Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

45.     Pursuant to Bankruptcy Rules 4001(b) and 6003, the Debtor requests that the Court conduct an expedited preliminary hearing on the Motion and (i) authorize the Debtor to use the Cash Collateral of Respondents to (a) maintain and finance the ongoing operations of the Debtor and (b) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties-in-interest and (ii) schedule the Final Cash Collateral Hearing on the relief requested herein.

46.     Absent authorization from the Court to use Cash Collateral on an interim basis pending the Final Cash Collateral Hearing, the Debtor will be immediately and irreparably harmed. The Interim Cash Collateral Order seeks approval to use Cash Collateral in an amount necessary to sustain the Debtor's operations prior to the Final Cash Collateral Hearing.

**Notice**

47.     As required under Bankruptcy Rule 4001, notice of hearing on this Motion will been served via regular U.S. mail, overnight mail, facsimile, and/or e-mail transmission on (i) the Office of the United States Trustee, (ii) Respondents, (iii) all of those creditors or parties-in-

interest who have filed a notice of appearance in this case, and (iv) the holders of the Debtor's 20 largest unsecured claims. The Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor moves this Court for authority to use the Cash Collateral pursuant to the terms and conditions described above and as more particularly described in an interim order to be proposed and, thereafter, pursuant to the terms and conditions of a Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection. The Debtor further prays for all other legal and equitable relief to which it may be entitled.

Respectfully submitted this 8th day of February, 2021.

STONE & BAXTER, LLP

BY:

/s/ *David L. Bury, Jr.*
Ward Stone, Jr.
Georgia Bar No. 684630
David L. Bury, Jr.
Georgia Bar No. 133066
Thomas B. Norton
Georgia Bar No. 997178

577 Mulberry Street, Suite 800
Macon, Georgia 31201
(478) 750-9898
(478) 750-9899 (fax)                    Proposed Counsel for Debtor
wstone@stoneandbaxter.com
dbury@stoneandbaxter.com
tnorton@stoneandbaxter.com

G:\CLIENTS\YC Atlanta Hotel, LLC\First Day Motions\Motion to Use Cash Collateral (clean for upload 02.08.21).doc

**EXHIBIT A**

**Budget**

(to be added by amendment)