**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| YC ATLANTA HOTEL LLC, | : | Case No. 21-50964-BEM |
| | : | |
| Debtor. | : | |
| | : | |

**DEBTOR'S MOTION FOR RECONSIDERATION OF THIS COURT'S MARCH 18, 2021 ORDER SCHEDULING AN EXPEDITED HEARING ON ACCESS POINT FINANCIAL, LLC'S EMERGENCY MOTION TO CONVERT TO CHAPTER 7 OR, IN THE ALTERNATIVE, TO APPOINT A CHAPTER 11 TRUSTEE**

Pursuant to F.R.C.P. 59 (made applicable by F.R.B.P. 9023 and Local Rule 9023-1), YC Atlanta Hotel, LLC (the "**Debtor**") files this *Motion for Reconsideration* as to the March 18, 2021 *Order and Notice of Expedited Hearing* (Dkt. 74) (the "**Order**"), respectfully requesting that the Court reconsider its Order and grant the Debtor at least 21 days' notice for such an extraordinary and case-, management-, and property ownership-dispositive Motion:

**STANDARD OF REVIEW**

In the Northern District, parties may, pursuant to Local Rule 9023-1, file motions to reconsider when "absolutely necessary." Local Rule 9023-1. F.R.C.P. 59, made applicable in this proceeding by F.R.B.P. 9023, governs motions to reconsider. Debtor understands very well that Rule 9023 should be employed sparingly. Indeed, this Court articulated the strict standard in *In re Homestead Partners, Ltd.*, 201 B.R. 1014 (Bankr. N.D. Ga. 1996). First, Debtor may not merely "reargue matters already argued and disposed of." *Id*. at 1017 (quotations and citations omitted). Second, it may not use Rule 59(e) to make "new arguments" or advance "new legal theories, which could and should have been raised prior to the issuance of judgment." *Id*. Third,

1

it may not file a motion to reconsider just "to pad the record for an appeal." *Id*. Finally, as this Court observed, the "goal" of Rule 59 is "limited to the correction of any manifest errors of law or misapprehension of fact." *Ellenberg v. Board of Regents of the Univ. Sys. (In re Midland Mech. Contrs.)*, 200 B.R. 453, 456 (Bankr. N.D. Ga. 1996). That is Debtor's intended focus.

In this case, the Debtor has so-far had no opportunity to make even initial arguments. Further, this Court might have based its finding of urgency, in part, on error in the Motion.

### PERTINENT FACTS AND PROCEDURAL HISTORY

1. The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 3, 2021 (the "**Petition Date**").

2. It operates a Clarion Inn in College Park, Georgia.

3. A little over a year ago in November 2019, the Debtor purchased what used to be the Red Lion Hotel, with financing provided by Access Point Financial, LLC ("**Access Point**").

4. The stated purpose of the financing, from Access Point's point of view, was for the acquisition, renovation, and conversion of the Red Lion Hotel into a Clarion Inn Hotel.

5. For over 20 years, the Debtor's highly-experienced operator, The Kishan Group, which is based in Reno, Nevada and led by Baldev Johal and Balbir Gosal, has owned and managed, and still does, approximately 14 hotels across the United States, including in Alaska, Washington, Nevada, Virginia, Louisiana, Utah, Florida, Texas, and Georgia.

6. They've won industry awards for hotel management, including a Developer of the Year award or something similarly-named if counsel doesn't remember the name exactly.

7. Fast forwarding through the procedural and substantive posture that is well-known by the Court after a busy week with all of these parties, the Debtor will simply summarize

2

that (i) Access Point filed its second expedited motion in less than a week late on March 18, 2021, wherein it requested emergency relief under § 1112 (Dkt. 70); (ii) Access Point filed its second request for an expedited hearing in less than a week on the same day (Dkt. 72); and (iii) this Court entered its *Order and Notice of Evidentiary Hearing*, wherein the Court granted the motion for expedited hearing and scheduled it for Tuesday, March 23, 2021 (with all trial exhibits due by the parties on the same day of their possibly all-day Monday hearing).

8. Although the Order did not contain an explicit finding of cause under Rule 9006(c), the Debtor assumes that the Court found sufficient cause to (i) shorten notice from at least 21 days under Rule 2002(a)(4) to 2 to 4 days (depending on how the intervening weekend is counted) and (ii) limit notice to the Debtor, Access Point, the SBA, and the United States Trustee rather than notice to all creditors and parties-in-interest as required under Rule 2002 (given that the Order's Distribution List is limited, the Order contains no service instructions, and service by mail would make it impossible to provide meaningful notice to other parties before the hearing).

9. The Debtor's sole reconsideration issue, which is raises understanding fully the Court's particularly significant discretion under Rule 9023, is whether there is not some other lesser remedy that still protects the status quo while also providing the Debtor sufficient due process for the Code's most extraordinary and potentially destructive form of relief—a conversion or appointment which would forfeit a Debtor's property and management rights.

10. The Debtor does not have time on less than 12 hours' notice to fully brief this matter for the Court and, thus, the Debtor respectfully requests that the Court hear oral argument from counsel later this morning at the 10 a.m. status conference regarding the Order, lest the urgent timing issues render this Motion moot. Debtor will point out the following initially:

3

11. First, the evidence will eventually show that, notwithstanding Access Point's repeated allegations of incompetence, gross mismanagement, and financial losses during the first 45 days of this case, *Access Point itself* (explicitly and in writing) viewed the Debtor and The Kishan Group, as well as employees of Latrobe Management (who have drawn so much criticism in this case—some fairly but mostly unfairly)—as recently as November 2019 as having satisfied overwhelmingly every single one of Access Point's extensive and demanding underwriting requirements, including managerial, operational, return on investment, risk exposure, liquidity (including a $3 million cash infusion from ownership), net operating income, net cash flow, and personal guaranty strength requirements, as well as other requirements—so much so that Access Point didn't hesitate to fund the renovation that is now such an emergency.

12. Indeed, but for the COVID-19 pandemic, Access Point projected just over a year ago a completed hotel value of $18.3 million to $19 million, even though Access Point expressly contemplated in its internal files that the 12-month renovation, even before COVID-19, "could disrupt customer service, room availability, and cash flow during" the renovation.

13. Second, the evidence will also eventually show that the only difference between the Debtor and its operators in November 2019 versus the Debtor and its operators from early 2020 to the present has been the COVID-19 pandemic and its impact on all hotels in the U.S.

14. Third, the evidence will eventually show that, notwithstanding the dire emergency alleged by Access Point, the Debtor's financial condition has improved and is recovering with the market, and is actually better than the financial condition that Access Point hardly treated as an emergency from March 2020 through late January 2021. Given that Access Point continued to work with the Debtor throughout 2020 with an urgency that can only be described as leisurely,

4

the only real "emergency" that Access Point now faces is a strategic and tactical emergency that a creditor faces when it realizes that a Debtor is poised for a legitimate use of the Code for a feasible restructuring, even potentially over its objection.

15. Fourth, the Debtor will address in writing three limited aspects of the Motion to Convert to the extent those matters influenced this Court's finding of cause or an emergency.

16. The first issue is that all of the parties waived the Sysco payment alleged at ¶19 of the Motion and consented to its payment as a part of the one-week emergency budget. (Note: There's a typo in the Budget, as the Budget shows $1,767.10, which is the $1,155.01 amount plus the $612.09 in the Breakfast category from a prior week).

17. The second issue is that the Debtor has, contrary to the allegation of Access Point, never paid any money post-petition to "Red Lion Hotel." *See* note 2 at Dkt. 70 at 6. Counsel explained to all of the parties in earnest, earlier this week, that those were *not* payments. Rather, they are clearly incoming *deposits* in the DIP account as a result of American Express settling credit card receipts overnight. It appears that American Express has "Red Lion Hotel" hardcoded into its processing system on account of the Debtor having taken over from the prior Red Lion Hotel. Access Point ignored counsel's explanation and also made no attempt to verify.

18. The third issue is that the Debtor has *not* obtained a Second Round PPP Loan. Rather than ask counsel about it, Access Point simply assumed that a government website, without any corroboration, is proof by itself of PPP *proceeds* coming to the Debtor. In fact, as counsel explained to the parties last night, the Debtor applied for a second PPP loan in January but then filed the Chapter 11, such that it became ineligible. It knew as a condition of counsel filing the case, that it would have to forgo the loan if approved. Thus, the Debtor refused to sign

5

the loan documents, never took any funds (even if the SBA may have released funds to the *lender*), and informed the banker before yesterday that it does not qualify for a PPP loan.

19.     Nevertheless, Access Point, without even thinking to call counsel to confirm, has essentially, and certainly at least implicitly, accused the Debtor on the docket of having committed a bankruptcy crime, of having committed federal bank fraud, and of have having violated the False Claims Act, for which there could be a significant award of civil damages and criminal prosecution for fraud on the United States.

Despite a good faith explanation last night, the allegation still persists on the docket.

## CONCLUSION

For all of the above stated reasons, the Debtor respectfully requests that the Court reconsider its March 18, 2021 Order and Notice; reconsider whether Access Point has satisfied its burden of showing cause for such an extraordinary shortening of notice; and reconsider providing the Debtor all of the notice that the Code and Rules otherwise provide it.

Respectfully submitted this 19th day of March, 2021.

          STONE & BAXTER, LLP
          BY:

          /s/ *David L. Bury, Jr.*
          Ward Stone, Jr.
          Georgia Bar No. 684630
          David L. Bury, Jr.
          Georgia Bar No. 133066
          Thomas B. Norton
          Georgia Bar No. 997178

577 Mulberry Street, Suite 800
Macon, Georgia 31201
(478) 750-9898; 478) 750-9899 (fax)          Counsel for Debtor
wstone@stoneandbaxter.com
dbury@stoneandbaxter.com
tnorton@stoneandbaxter.com

G:\CLIENTS\YC Atlanta Hotel, LLC\Motion to Convert\Motion for Reconsideration (for upload 03.19.21).docx

## CERTIFICATE OF SERVICE

This is to certify that on this date I served a copy of the forgoing *Motion* using the CM/ECF system, which system sent an electronic notification of and a link to a copy of the *Motion* on all parties who are participating in this case via CM/ECF.

This 19th day of March, 2021.

/s/ *David L. Bury, Jr.*
David L. Bury, Jr.
Georgia Bar No. 133066

Stone & Baxter, LLP
577 Mulberry Street, Suite 800
Macon, GA 31201
(478) 750-9898; (478) 750-9899 (fax)
dbury@stoneandbaxter.com            Counsel for the Debtor