**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| | ) | |
| YC ATLANTA HOTEL, LLC, | ) | |
| | ) | Case No. 21-50964-bem |
| | ) | |
| Debtor. | ) | |

**UNITED STATES TRUSTEE'S MOTION**
**FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**
**OR IN THE ALTERNATIVE CONVERSION TO CHAPTER 7**

Nancy Gargula, United States Trustee for Region 21 ("United States Trustee"), respectfully moves the Court to enter an order directing the appointment of a chapter 11 trustee, or, in the alternative, conversion to chapter 7 for YC Atlanta Hotel, LLC. In support of this motion, the United States Trustee shows the Court as follows:[1]

**STANDING**

The United States Trustee is a party in interest and may raise, appear and be heard on any issue in any case of proceeding under title 11. 11 U.S.C. § 307. Pursuant to 28 U.S.C. § 586(a)(3), the United States Trustee's duties include supervising the administration of chapter 11 cases. The United States Trustee has standing to file motions to dismiss or convert chapter 11 cases, and to seek the appointment of a Chapter 11 trustee, or examiner under 11 U.S.C. §§ 307, 1104(a), 1104(c) and 1112(b)(1), as well as 28 U.S.C. § 586.[2]

---

[1] The United States Trustee reserves the right to amend or supplement this motion as necessary and based on additional documents or information provided.
[2] *See also* Collier on Bankruptcy ¶ 1112.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

## COURSE OF PROCEEDING

1. On February 3, 2021, YC Atlanta Hotel LLC ("Debtor") filed a voluntary petition for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Georgia.

2. Debtor describes its business activity as being the owner and operator of a Clarion Inn Hotel in College Park, Georgia. The hotel is a commercial establishment offering paid accommodations, meals and other services for travelers and the public.

3. Debtor is a Georgia limited liability company with a single member.

4. Debtor's sole member is YC Fernley Hotel LLC. YC Fernley Hotel LLC has three members: Balbir S. Gosal ("Mr. Gosal") with a fifty percent (50.00%) interest; Baldev S. Johal ("Mr. Johal) with a twenty-five percent (25.00%) interest; and, Ranjit S. Johal with a twenty-five percent (25.00%) interest.

5. On its petition, Debtor estimated assets of $11,883,511.69 and liabilities of $10,701,472.61. (Dkt. No. 44, p. 2) Debtor's assets include commercial real property; cash and its equivalents; accounts receivable; fixtures; two commercial vehicles; a Choice Hotel franchise license; revenues generated by the operation of the business as a going concern; and, goodwill and customer lists.

6. On February 8, 2021, Debtor filed its Motion of Debtor-In-Possession for Interim and Final Orders (a) Authorizing the Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (b) Requesting an Expedited Interim Hearing Thereon; and (c) Scheduling a Final Hearing on the Valuation and Use of Cash Collateral (the "Cash Collateral Motion"). (Dkt. No. 8)

7. On February 10, 2021, Access Point filed an Objection to Debtor's Cash Collateral

Motion and a Request for Adequate Protection Pursuant to Section 363(e). (Dkt. No. 15)

8. On February 12, 2021, the Court entered its Interim Cash Collateral Order, which granted the Cash Collateral Motion, but required, inter alia, the following:

> The Debtor shall continue to operate and maintain its property and business in accordance with the Budget and this Interim Order, provided that (i) any expenditure in a particular line item category on the Budget that would cause actual expenditures for that category to exceed the monthly budgeted amount for that category must be approved in advance by each of the Respondents or by the Court . . . (Dkt. No. 26)

9. On February 16, 2021, the Court scheduled an evidentiary and final hearing on the Cash Collateral Motion and related Objection for March 22, 2021. (Dkt. No. 35)

10. On March 4, 2021, the United States Trustee commenced the section 341(a) meeting of creditors. Debtor's representative and managing member, Baldev Johal, testified on behalf of Debtor. The section 341(a) meeting was continued to April 7, 2021.

11. To date, no Official Committee of Unsecured Creditors or Chapter 11 trustee has been appointed in Debtor's case, and Debtor continues in possession of its property and operating its business as debtor-in-possession, consistent with 11 U.S.C. §§ 1107 and 1108.

12. On March 11, 2021, Access Point filed an Emergency Motion to Enforce Compliance With The Court's Interim Cash Collateral Order and for Related Relief (the "Motion to Enforce"). (Dkt. No. 53)

13. On March 14, 2021, Debtor filed a Response to Access Point's Motion to Enforce. (Dkt. No. 60) In this Response, the Debtor admits to paying pre-petition claims post-petition and to paying in excess of the budgeted amount without seeking the approval of Access Point or the Court. Both of these actions violate the Court's Interim Cash Collateral Order.

14. On March 18, 2021, Access Point filed a Motion to convert/reconvert case to Chapter 7 or, in the Alternative, to Appoint Chapter 11 Trustee. (Dkt. No. 70)

## APPLICABLE STATUTES

### A. Appointment of a Chapter 11 Trustee

15. Section 1104 sets forth the statutory provisions regarding the appointment of a trustee or examiner. The movant seeking the appointment of a chapter 11 trustee bears the burden of proof by a preponderance of the evidence.[3]

16. Section 1104(a)(1) requires the court, upon request by the United States Trustee or a party in interest, to order the appointment of a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . ."

17. Through section 1104(a)(1), Congress has mandated that the chapter 11 debtor in possession, which acts as a fiduciary of the creditors of the bankrupt estate, be an honest broker.[4] The plain language of section 1104(a)(1) (specifically, the use of the word "shall") indicates that courts may not look beyond a finding of "cause" in considering appointment of a trustee.[5]

18. Further, section 1104(a)(1), requires the bankruptcy court, upon motion, to appoint a trustee when the movant has proved 'cause,' which the statute defines to include incompetence

---

[3] *See Keeley &. Grabanski Land P'ship v. Keeley (In re Keeley and Grabankski Land P'ship)*, 455 B.R. 153, 162-163 (8th Cir. BAP 2011) (adopting preponderance of the evidence standard). *See also Tradex Corp. v. Morse*, 339 B.R. 823, 830-32 (D. Mass. 2006) (same); *In re Altman*, 230 B.R. 6, 16-17 (Bankr. D. Conn. 1999), *vacated in part on other grounds*, 254 B.R. 509 (D. Conn. 2000) (adopting preponderance standard); *In re Berwick Black Cattle Co.*, 405 B.R. 907, 912 (C.D. Ill. 2009); *In re Plaza del Retiro, Inc.*, 417 B.R. 632, 640 (Bankr. D.N.M. 2009) (noting split of authority on burden of proof issue); *see also Grogan v. Garner*, 498 U.S. 279, 286 (1991) (noting that the general standard of proof in civil and bankruptcy cases, and in nondischargeability litigation in particular, is a preponderance of the evidence). *But see In re Marvel Entertainment Group, Inc.*, 140 F.3d at 471 (3d Cir. 1998) (requiring clear and convincing evidence for the appointment of a trustee under 11 U.S.C. § 1104(a)).

[4] *See Wolf v. Weinstein*, 372 U.S. 633, 651 (1963) (acknowledging the willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee"); *In re V. Savino Oil and Heating Co.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989) (stating that "the willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in possession defaults in this respect, Section 1104(a)(1) [of the Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee.") (cited with approval in *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998)).

[5] *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) (stating that "[11 U.S.C. § 1104](a)(1) requires the bankruptcy court, upon motion, to appoint a trustee when the movant has proved 'cause,' which the statute defines to include incompetence and gross mismanagement."); *In re National Staffing Servs., LLC*, 2005 WL 3729404 at *2 (Bankr. N.D. Ohio Nov. 21, 2005) (11 U.S.C. § 1104(a)(1) provides for "the mandatory appointment of a trustee upon a specific finding of 'cause.'").

and gross mismanagement due to acts or omissions which occurred prior to the Petition Date, this Court must direct the appointment of a trustee[6]

19. In the alternative, the court can order the appointment of a trustee pursuant to the provisions of section 1104(a)(2). This subsection provides that the court shall order the appointment of a trustee if such an appointment is determined to be in the interests of creditors, any equity security holders, and other interests of the estate.

20. When a trustee is appointed "in the interests of creditors," it is not necessary to find that the debtor or management engaged in any misdeeds.[7] Under section 1104(a)(2) the court should consider the debtor's trustworthiness; past and present performance; likelihood of successful reorganization; absence of creditor confidence in current management; and the benefits of appointing trustee balanced against the cost of appointment.[8]

21. Finally, the court may order the appointment of a trustee if grounds exist for conversion or dismissal of the case but the court determines that the appointment of a trustee is in the best interests of the creditors and the estate. 11 U.S.C. § 1104(a)(3).

## **CAUSE EXISTS FOR APPOINTMENT OF A TRUSTEE**

**Debtor representative was unable to respond to questions during meeting of creditors.**

22. On March 4, 2020, the United States Trustee commenced Debtor's section 341(a) meeting of creditors ("341 Meeting"). Debtor's authorized representative and managing member, Baldev Johal, testified that he did not know the answers to many of the United States Trustee's questions about basic ownership facts, the hotel's physical location, operating activities, and essential governance mechanisms of the Debtor.

---

[6] *Id.*
[7] *In re Sharon Steel*, 871 F.2d 1217, 1226 (3d Cir. 1989).
[8] *In re Eurospark Indus.*, 424 B.R. 621, 621 (Bankr. E.D.N.Y. 2010).

23. Mr. Johal was unable to answer what if any business licenses are required to operate the hotel, number of employees at the time of filing, the identity of the authorized signatories or personas authorized to conduct transactions on the debtor in possession bank accounts, estimated gross monthly revenues or expenses and the amount of cash on hand.

24. Additionally, Mr. Johal was unable to answer questions related to the name of any entities leasing property of the debtor, contractual lease terms, the amounts of lease payments, last payment received by Debtor, or the default status on lease payments owed to Debtor.

25. In response to questions regarding property of the estate and cash on hand, Mr. Johal testified that Debtor's property contained a safe that maybe holds a couple hundred dollars for petty cash emergency purposes, but they haven't been able to access the safe because the former general manager who departed from Debtor's employment has the key, and Debtor does not "necessarily want to spend several hundred dollars to collect two."

26. Further, in response to the questions regarding cost-cutting measures implemented since filing its petition for relief, Mr. Johal advised that Debtor has gone down to bare bones operations.

**Debtor has provided misinformation regarding personnel.**

27. It also appears that the Debtor misreported personnel facts and related payroll expenses.

28. On February 8, 2021, Debtor filed its Motion of Debtor-In-Possession for Interim and Final Orders (a) Authorizing the Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (b) Requesting an Expedited Interim Hearing Thereon; and (c) Scheduling a Final Hearing on the Valuation and Use of Cash Collateral (the "Cash Collateral Motion").[9]

---
[9] Dkt. No. 8

29. As part of the Cash Collateral Motion Debtor filed a budget for the period comprised of February 2021 through and including July 2021.[10] Debtor's budget as filed reflects monthly payroll expenses of $59,00.00 for February 2021 through April 2021; $88,500.00 for May 2021; and $59,000.00 for June 2021through July 2021.

30. Debtor by and through counsel provided the United States Trustee an Employ Earnings Summary for February 12, 2021 reflecting a total of twenty-six (26) employees[11] and a payroll cost of $19,396.66.

31. Approximately one month later Debtor by and through counsel provided the United States Trustee and other parties in interest an Employ Earnings Summary for March 12, 2021 reflecting a total of twenty-three (23) employees[12] and a payroll cost of $19,232.29.

32. According to the Actual Expenditures of the Debtor attached to the Court's Order of March 19, 2021[13] the total amount of payroll expenses in February 2021 totaled $37,704.63, whereas the Debtor's Monthly Operating Report reflects total payroll expenses of $39,748.85.[14]

33. This information demonstrates a lack of understanding by the Debtor's managing member, Mr. Johal, and further exhibits the disconnect between the daily business operations and finances.

34. Since the inception of the present case, Aly Leon has appeared at multiple court proceedings with the Debtor and at the Initial Debtor Interview and 341 Meeting conducted by the United States Trustee.[15] In correspondence with the United States Trustee's Office on March 18, 2021, Debtor's counsel advised: "Aly Leon, she is an employee of The Kishan Group and YC

---

[10] Dkt. 26
[11] See attached Exhibit "A"
[12] See attached Exhibit "B"
[13] Dkt. 79
[14] Dkt 90
[15] At the 341 meeting Ms. Leon identified herself as project manager for the Debtor.

Atlanta directly. She is integral to the project management and finances at different properties which are related to The Kishan Group, including YC Atlanta. By way of further response, here is an explanation for her position and role, as described by Ms. Leon:

> Official title "Executive Administration/Finance" for The Kishan Group. I work with the owners directly and handle finances on current project renovations or new construction. I pretty much make sure we have the funds to do what we need to do and work with the lenders to ensure they're happy so we can be happy. With that, I also work hand in hand with the owners to ensure we're compliant with our lenders meaning if they need financials or updated budgets, etc. I ensure it gets completed.[16]

35. Ms. Leon does not appear on any of the payroll records for the Debtor, despite Debtor's counsel's statement that she is an employee of YC Atlanta directly.

36. Further, according to the Debtor's Statement of Financial Affairs filed with the Court, The Kishan Group is an insider of the debtor in possession.[17]

37. Additionally, Mr. Johal's testimony at the 341 Meeting as Debtor's authorized representative and managing member, is that The Kishan Group is operated by his brother, Ranjit Johal. Ranjit Johal is a 25% owner of the limited liability company that owns the Debtor.

38. According to the Nevada Sectary of State Business Records, Ranjit Johal is President, Barninder Johal is Director, and Lakhvir Sodi serves as both the Secretary and Treasurer of The Kishan Group.[18]

39. According to the Wells Fargo application of YC Atlanta Hotels, LLC, for debtor in possession financial accounts there are a total of four (4) authorized signers to conduct financial transactions- Balbir S. Gosal; Baldev S. Johal; Ranjit S. Johal; and **Lakhvir Sodi.**[19]

---

[16] See attached Exhibit "C"
[17] Dkt. No. 44, Page 35 of 46.
[18] See attached Exhibit "D"
[19] Due to the sensitive nature of the information contain in the Wells Fargo Application the United States Trustee has not attached it as an exhibit. Debtor's counsel and the United States Trustee are in possession of a copy of the Wells Fargo Application.

40. Ms. Sodi does not appear on any of the payroll records for Debtor, despite her ability to conduct financial transactions on behalf of the debtor in possession and her designation in the Wells Fargo debtor in possession account application as a key executive and office manager.

41. It is undisputed that courts generally favor allowing a debtor to remain in possession of the estate absent a showing that there is a need for the appointment of a trustee.[20] However, a court's willingness to allow a debtor to remain in possession and control of the estate is premised upon an assurance that the debtor will carry out the fiduciary responsibilities of a trustee including to protect and conserve property in its possession for the benefit of creditors.[21]

**Unexplained Financial Transactions**

42. In response to the COVID-19 pandemic, Congress enacted, and the President signed into law on March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").[22] Section 1102 of the CARES Act creates the Paycheck Protection Program ("PPP") by amending the Small Business Association's ("SBA") existing Section 7(a) loan program, as codified in 15 U.S.C. § 636(a), by adding paragraph (36).[23]

43. Under the PPP, eligible small businesses may obtain guaranteed loans to cover certain expenses including "pay roll costs," "interest on any mortgage obligation," "rent," and "utilities."[24] Loans issued under the PPP may be forgiven if certain conditions are satisfied, namely that the proceeds of the loan are used to cover allowable expenses.[25] To receive forgiveness of a PPP loan, the borrower must "submit to the lender that is servicing the covered loan an application" including documentation and certification that the amounts to be forgiven were "used to retain

---

[20] *See, e.g., In re Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D.Ga. 2000).
[21] See In re Ionosphere Clubs, Inc., 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) ("a debtor-in-possession must act as a 'fiduciary of his creditors' to 'protect and conserve property in its possession for the benefit of creditors,' and to refrain [ ] from acting in a manner which could damage the estate ..." (citing In re Sharon Steel Corp., 86 B.R. 455, 457 (Bankr. W.D. Pa. 1985)).
[22]  *See* Pub. L. No. 116-136, 134 Stat. 281 (2020).
[23] *See* CARES Act § 1102; 15 U.S.C. § 636(a)(36).
[24] *See* CARES Act § 1102(a)(2); 15 U.S.C. § 636(a)(36)(F)(i).
[25] *See* CARES Act § 1106(b); 15 U.S.C. § 9005(b).

employees, make interest payments on a covered mortgage obligation, make payments on a covered rent obligation, or make covered utility payments."[26]

44. The CARES Act initially allocated $349 billion to the PPP.[27] However, these initial funds were exhausted, and the SBA stopped accepting new PPP loan applications on April 16, 2020.[28] Additionally, the CARES Act required that the SBA Administrator "issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5, United States Code."[29]

43. On April 2, 2020, the SBA released its form application for the PPP ("Form PPP Application"). The Form PPP Application requires, among other things, that the applicant certify it is not "presently in any bankruptcy."[30] On April 3, 2020, the SBA published its First Interim Final Rule which requires that applicants for PPP loans submit the Form PPP Application. On April 24, 2020, concurrent with Congress' extension of additional funding for the Paycheck Protection Program, the SBA posted a new interim final rule, which was subsequently published in the Federal Register on April 28, 2020 and titled "Business Loan Program Temporary Changes; Paycheck Protection Program –Requirements – Promissory Notes, Authorizations, Affiliation, and Eligibility" (the "Fourth Interim Final Rule").[31] The Fourth Interim Final Rule provides additional information regarding a number of eligibility requirements, including the availability of PPP loans to companies in bankruptcy.[32] The loan proceeds from a PPP loan must be to be attributed to payroll, lease/mortgage interest and utilities.

---

[26] *See* 15 U.S.C. § 9005(e).
[27] CARES Act § 1102(b)(1).
[28] *See Schuessler v. U.S. Small Bus. Admin.*, 2020 WL 2621186, at *7 (Bankr. E.D. Wis. May 22, 2020).
[29] *See* CARES Act § 1114; 15 U.S.C. § 9012.
[30] *See* SBA Form 2483, Question 1.
[31] 85 Fed. Reg. 23,450.
[32] https://www.federalregister.gov/documents/2020/04/28/2020-09098/business-loan-program-temporary-changes-paycheck-protection-program-requirements-promissory-notes

44. On or about April 20, 2020, Debtor obtained a Small Business Association Paycheck Protection Program ("PPP") loan issued by Live Oak Banking Company in the amount of $161,000.00. The PPP loan proceeds must be to be attributed to payroll, lease/mortgage interest and utilities of YC Atlanta Hotels, LLC.

45. On or around May 25, 2020, the Debtor obtained an Economic Injury Disaster Loan (EIDL) issued by the Small Business Association. The EIDL issued to the Debtor is in the amount of $150,000.00. The EIDL loan proceeds must be utilized for operational capital purposes of YC Atlanta Hotels, LLC.

46. On February 4, 2021 the United States Trustee issued a request for Chapter 11 Financial and Business Information to Debtor's counsel and request for scheduling the Initial Debtor Interview.

47. On March 5, 2021 the United States emailed Debtor's counsel a list of twenty-two (22) pre-petition transactions pulled from financial account statements provided by the Debtor. The United States Trustee requested explanation for each transaction and documentation. To date a copy the Debtor has failed to file a response.

**Conversion to Chapter 7**

In the alternative, the UST asserts that pursuant to 11 U.S.C. § 1112(b), cause exists for the conversion of these cases to proceedings under chapter 7. Section 1112(b)(1) provides:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

48. Under 11 U.S.C. § 1112(b)(4)(B) and (C), the term "cause" in Section 1112(b)(1)

includes, among other things, gross mismanagement of the estate.

49. Through the amendments to Section 1112(b), Congress eliminated this Court's discretion that was previously suggested with the use of the permissive word "may" in the subsection and, through substitution of the mandatory word "shall" for "may," directed this Court to convert or dismiss the case, "whichever is in the best interests of the creditors and the estate," if "cause" is established. 7 COLLIER ON BANKRUPTCY § 1112.04(1) (15th ed. rev. 1980) (". . . as amended in 2005, section 1112(b) circumscribes the court's discretion by directing certain instances in which the court must, and must not, convert or dismiss the case."); *see also Association of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1153 (D.C. Cir. 1994) ("The word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive.").

50. As of the filing of this pleading, the Debtor has filed only one monthly operating report Given the Debtor's current limited operations, insolvency appears imminent.

51. Mismanagement pervades this case and there is no clear management or supervision of the Debtor's operations. No one is in charge. The Debtor was, at a minimum, mismanaged while under the direction of current management. Accordingly, the appropriate remedy under the Code is either the appointment of a chapter 11 trustee or conversion of this case, followed by the appointment of a chapter 7 trustee.

## Conclusion

It is axiomatic that a debtor in possession is a fiduciary. As a fiduciary, the debtor in possession does not act in its own interest but, like a trustee, must act in the best interest of the creditors of the estate. *Commodity Futures Trading Comm. v. Weintraub*, 47 U.S. 343, 354-55 (1985). "[S]ection 1104 represents a protection that the court should not lightly disregard or

encumber with overly protective attitudes towards debtors-in-possession." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989). Although courts apply a presumption that a debtor should remain in possession, they do so "based on the notion that the debtor is generally best equipped to oversee the company's reorganization." *Tradex Corp. v. Morse*, 339 B.R. 823, 830 (D. Mass. 2006). YC Atlanta Hotel, LLC's failure to timely provide clear and reliable financial information warrants appointment of a trustee or examiner. *In re Royal Alice Properties, LLC,* 2020 WL 5357795 (Bankr. E.D. Louisiana, September 4, 2020)

**WHEREFORE,** the United States Trustee prays for the immediate entry of an order appointing a trustee or converting this case to chapter 7 or for such other relief as the court deems necessary and appropriate.

NANCY J. GARGULA
United States Trustee, Region 21

*/s/ Vanessa A. Leo*
Vanessa A. Leo
Georgia Bar No. 410598
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, S.W.
Atlanta, Georgia  30303
(404) 331-4437
Vanessa.A.Leo@usdoj.gov

## CERTIFICATE OF SERVICE

This Is To Certify That I Have On This Day Electronically Filed The *United States Trustee's Motion To Appoint A Chapter 11 Trustee, Or In The Alternative Conversion to Chapter 7* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

David L. Bury    dbury@stoneandbaxter.com, MBelflower@stoneandbaxter.com;lchapman@stoneandbaxter.com;7732720420@filings.docketbird.com

Anna Mari Humnicky    ahumnicky@smallherrin.com, klemons@smallherrin.com;notices@nextchapterbk.com;lcarlton@smallherrin.com

Vanessa A. Leo    ustpregion21.at.ecf@usdoj.gov, Vanessa.A.Leo@usdoj.gov

Thomas B. Norton    tnorton@stoneandbaxter.com, lford@stoneandbaxter.com;mbelflower@stoneandbaxter.com

Andres H. Sandoval    andres.sandoval@usdoj.gov, charlie.cromwell@usdoj.gov;Larissa.selchenkova@usdoj.gov

Graham H. Stieglitz    gstiegli@burr.com

Ward Stone    wstone@stoneandbaxter.com, dbury@stoneandbaxter.com;mcathey@stoneandbaxter.com;lford-faherty@stoneandbaxter.com;MBelflower@stoneandbaxter.com;lchapman@stoneandbaxter.com

Adolyn C. Wyatt    awyatt@burr.com, dsteiger@burr.com

I further certify that on this day, I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties at the address shown for each:

YC Atlanta Hotel LLC
5851 S. Virginia Street
Reno, NV 89502-6022

Dated: March 23, 2021                                 NANCY J. GARGULA
                                                      UNITED STATES TRUSTEE
                                                      REGION 21

                                                      By: /s/ Vanessa A. Leo
                                                         Vanessa A. Leo
                                                         Georgia Bar No. 410598