**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| YC ATLANTA HOTEL LLC, | : | Case No. 21-50964-BEM |
| | : | |
| Debtor. | : | |
| | : | |

**DEBTOR'S STATUS REPORT REGARDING CASH COLLATERAL**

COMES NOW YC Atlanta Hotel, LLC (the "**Debtor**") and files this Status Report regarding cash collateral and related negotiations, noting that it is available to be heard immediately should the Court require a conference with the parties. Otherwise, issues raised in this Report can likely wait until Tuesday morning:

1. On March 19, 2021 in the morning, this Court entered its Order (Dkt. 79) (the "**Emergency Cash Collateral Order**") which (i) ordered the Debtor to operate in accordance with an interim one-week budget through the March 22, 2021 final hearing on Debtor's Cash Collateral Motion (the "**Final Hearing**") and (ii) continued all remaining provisions of the Interim Cash Collateral Order (Dkt. 26) "that do not concern the payment of budgeted expenses."

2. The Emergency Order did not contemplate budgeted expenditures beyond the March 22, 2021 Final Hearing or indicate one way or the other whether any portion of the budget attached to the Interim Order would continue beyond March 22, 2021, likely because the Court and the parties all presumed that the Final Hearing would address any such continuation.

3. On March 19, 2021 in the afternoon, Access Point Financial, LLC's ("**Access Point's**") counsel reached out to Debtor's counsel regarding a possible resolution of the Final Hearing. The two parties conducted productive negotiations into the late evening on March 19

1

and through the late morning of March 20, at which point the parties reached a settlement, subject to announcement and documentation. The parties informed the Court on March 20.

4.     On March 22, 2021, the Court heard from all of the constituencies at a status conference in lieu of the parties litigating the Final Hearing on the merits. Specifically, counsel for the Debtor and for Access Point announced the terms of the proposed settlement, subject to the SBA and the United States Trustee being able to review the final proposed order.

5.     On March 23, 2021 in the morning, Debtor's counsel sent the parties an email regarding an important elevator repair, stating that "Debtor needs to get this repair going immediately, and use the insurance check, plus additional cash collateral for the difference, to pay for it. Please let us know if APF approves the repair/expenditure." *See* **Exhibit A**.

6.     On March 23, 2021 in the evening, Debtor's counsel sent the parties the weekly Cash Collateral Report required by the Interim Order for the week ending March 19. *See* **Exhibit B** (which includes the entire email chain without the Report). As a part of that email, counsel also provided the parties additional information about prior issues, including the Sysco issue that some of the other parties raised at the emergency status conference on Friday, March 19, 2021.

7.     On March 24, 2021 in the morning, Debtor's counsel sent the parties a proposed interim one-week budget, stating that "attached is a draft of another interim budget while we work out the Cash Collateral Order and 13 Week Budget." *See* Exhibit B. Counsel sent the proposed budget in good faith and out of an abundance of caution given the parties seemed to be in a grey area on cash collateral while they worked out the form of the Order—the form of which Access Point took the initial attempt at drafting for the parties.

8. On March 25, 2021 at a little after midnight, Access Point's counsel distributed a first draft of a proposed final order on the Cash Collateral Motion.

9. On March 25, 2021 in the afternoon, Access Point's counsel reached out to the parties and (i) asked various questions about the March 23 report (which the Debtor answered promptly and extensively, as shown by the exchange) and (ii) stated that, as "it relates to the elevator repair, APF does not consent to the expense. We do anticipate that once we have a working and agreed upon budget under the Cash Collateral Order (which I expect/hope would to be by tomorrow) which will include those related expenses." *See* **Exhibit C**.

10. On March 26, 2021 in the afternoon, Debtor's counsel reached out to the parties again, that time regarding an urgent fire alarm repair, stating that "I'll assume that Access' response for these [repairs] is similar to its response on the elevator repair." *See* **Exhibit D** (which contains a detailed summary, including quotes for, for the required repairs).

11. On March 30, 2021 in the afternoon, Debtor's counsel sent the parties a proposed redline to the proposed Final Cash Collateral Order and then followed-up later that afternoon with a proposed 13 Week Final Cash Collateral Budget.

12. On March 30, 2021 in the evening, Debtor's counsel sent the parties the weekly Cash Collateral Report required by the Interim Order for the week ending March 26. *See* **Exhibit E**. Debtor's counsel explained that "[w]e never heard back on the interim budget that we sent around for the week ending March 26 (which would have picked up where the Court's March 22 budget left off). Thus, my understanding is that only two payments were made that were not already formally blessed by the Court's prior Order: a breakfast charge of $1,379.89 and the

3

Friday payroll which we had no choice but to pay, lest the employees quit and/or we expose ourselves to criminal theft of services." To be sure, those charges were after March 22.

13. The Debtor, unsure about the status of cash collateral following the March 22 status conference, but figuring the parties were only days away from a final resolution and assuming that the parties could work out a weekly arrangement on account of the goodwill from the March 22 settlement, has endeavored to pay only critical, § 506(c) items (such as payroll—an item that Debtor's counsel informed the Court about back at the March 19 status conference). The Debtor has continued with that approach into this week but is being damaged as a result.

14. On March 31, 2021 in the morning, Debtor's counsel followed-up with the parties about the important, if not urgent, repairs, stating that "I know cash collateral is still up in the air and under review but I feel obligated to pass along this question from Baldev just now as a follow up to my prior email: 'Hi David: Any word on the two expenditures that we submitted for approval namely: Elevator repair and Fire alarm repair? *Both are critical items because if we don't get the fire alarm system repaired the City will not renew our business license*.'" (emphasis added). *See* **Exhibit F**.

15. To date, Access Point has not approved the urgent elevator repair (which counsel sought prior written approval for on March 23); has not approved or even acknowledged the interim budget for the week ending March 26 (which counsel submitted early on March 24); and has not approved or even acknowledged the urgent fire alarm repair (which counsel submitted on March 26). Finally, counsel has not heard back as to the March 31 follow-up on both repairs.

16. Nevertheless, the Debtor is still optimistic that the parties are close to a final proposed Order and Budget—barring irresolvable issues related to and arising in connection with

the March 29 Chapter 11 filing of the Debtor's parent—YC Fernley Hotel LLC (Case No. 21-52543)—which Debtor will not address in this Report. The Debtor, is, however, concerned about (i) continuing into another week without formal Court authority to operate or with uncertainty about the same and (ii) continuing damage to the estate, without Court intervention, if the Debtor continues in its essentially frozen status expenditures-wise.

17. Although there are significant and continuing expenses that require attention, the Debtor's controller indicated this morning that, at a minimum, the Debtor needs to place a supplies order with HD Supply for approximately $1,500. Counsel is happy to supplement this Status Report with a formal proposed weekly budget through April 7, 2021.

## CONCLUSION

At a minimum, especially as the parties head into another contentious week of litigation, the Debtor and its counsel wanted to (i) update the Court on the parties' progress to date; (ii) let the Court know about some uncertainty that might require Court intervention; and (iii) show the Court that the Debtor and its counsel are working in good faith to navigate what has so far been a very heated and potentially treacherous path for the Debtor. If the Court would like to hear from the Debtor, then the Debtor is available immediately. However, counsel will reach out to the parties to see if they can resolve the above uncertainty without a hearing. In all events, counsel submits that the issues raised in this Report can wait until the April 6 hearing.

Respectfully submitted this 1st day of April, 2021.

                STONE & BAXTER, LLP
                BY:

                /s/ *David L. Bury, Jr.*
                Ward Stone, Jr.
                Georgia Bar No. 684630

|  |  |
|---|---|
|  | David L. Bury, Jr. |
|  | Georgia Bar No. 133066 |
|  | Thomas B. Norton |
|  | Georgia Bar No. 997178 |
| 577 Mulberry Street, Suite 800 |  |
| Macon, Georgia 31201 |  |
| (478) 750-9898; 478) 750-9899 (fax) | Counsel for Debtor |
| wstone@stoneandbaxter.com |  |
| dbury@stoneandbaxter.com |  |
| tnorton@stoneandbaxter.com |  |

G:\CLIENTS\YC Atlanta Hotel, LLC\Motion to Convert\Status Report on Cash Collateral (for upload 04.01.21).docx

## CERTIFICATE OF SERVICE

This is to certify that on this date I served a copy of the forgoing *Status Report* using the CM/ECF system, which system sent an electronic notification of and a link to a copy of the *Status Report* on all parties who are participating in this case via CM/ECF.

This 1st day of April, 2021.

>   */s/ David L. Bury, Jr.*
>   David L. Bury, Jr.
>   Georgia Bar No. 133066

Stone & Baxter, LLP
577 Mulberry Street, Suite 800
Macon, GA 31201
(478) 750-9898; (478) 750-9899 (fax)
dbury@stoneandbaxter.com               Counsel for the Debtor