**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | **Chapter 11** |
| | : | |
| YC ATLANTA HOTEL LLC, | : | **Case No.  21-50964-BEM** |
| | : | |
| Debtor. | : | |
| | : | |

**DEBTOR'S MOTION FOR RECONSIDERATION AND MOTION TO AMEND JUDGMENT AS TO THIS COURT'S ORDER DENYING APPOINTMENT OF A CHAPTER 11 TRUSTEE AND APPOINTING AN EXAMINER**

COMES NOW YC Atlanta Hotel LLC ("**Debtor**" or "**YC Atlanta**") and, pursuant to F.R.C.P. 59 (made applicable by F.R.B.P. 9023 and Local Rule 9023-1) and F.R.C.P. 52 (made applicable by F.R.B.P. 7052 and 9014) files this *Motion for Reconsideration and Motion to Amend Judgment* as to this Court's May 20, 2021 *Order Denying Appointment of a Chapter 11 Trustee and Appointing an Examiner* (Dkt. 152) (the "**Order**"), respectfully showing:

**Summary of Argument**

The Debtor is not seeking reconsideration of, and nor does it believe that this Motion should in any way delay the implementation of, this Court's decision to appoint an examiner. The Debtor fully expects and hopes that the examiner appointment will proceed without delay. Rather, the Debtor is seeking reconsideration on two very narrow issues that, while having no bearing on or ultimate relevance to the Court's order under §§ 1104 and 1112, could bear, prejudicially, on unrelated future hearings and result in unnecessary litigation.

First, the Court observed when explaining why the Debtor filed its bankruptcy case that the "evidence showed that the [ten-day] letter was delivered to Debtor on January 22, 2021." The Debtor respectfully submits that the evidence merely established that there is a likely § 502

allowance dispute as to the receipt date and APF's entitlement to over $1.2 million in statutory fees. Because that is a claims allowance issue that has nothing to do with § 1104 or § 1112, the Debtor is asking the Court to clarify its Order to state that (i) there is a dispute about the receipt date, (ii) that dispute was not properly before the Court, (iii) that dispute is reserved for later.

Second, the Court, with a clarifying amendment, upheld its privilege ruling, holding that Ranjit Johal, an employee of The Kishan Group, is not the functional equivalent of an employee of YC Atlanta. Emphasizing an issue that was never asked to be briefed or discussed by the parties, the Debtor is asking the Court to clarify its Order to (i) state that Ranjit Johal's discussions with Stone & Baxter regarding issues in the related YC Atlanta and YC Fernley bankruptcy cases are privileged on account of his central, closely-held equity status (regardless of his employment status with The Kishan Group) or, alternatively, (ii) state that the ruling does not preclude future litigation about whether the privilege extends to him on other grounds, including that his indirect/direct ownership status makes him central to the privilege.

## Standard of Review

In the Northern District, parties may, pursuant to Local Rule 9023-1, file motions to reconsider when "absolutely necessary." Local Rule 9023-1. F.R.C.P. 59, made applicable in this proceeding by F.R.B.P. 9023, governs motions to reconsider. Debtor understands very well that Rule 9023 should be employed sparingly. Indeed, Judge Drake articulated the strict standard in *In re Homestead Partners, Ltd.*, 201 B.R. 1014 (Bankr. N.D. Ga. 1996). First, Debtor may not merely "reargue matters already argued and disposed of." *Id*. at 1017 (quotations and citations omitted). Second, it may not use Rule 59(e) to make "new arguments" or advance "new legal theories, which could and should have been raised prior to the issuance of judgment." *Id*. Third,

2

it may not file a motion to reconsider just "to pad the record for an appeal." *Id*. Finally, the "goal" of Rule 59 is "limited to the correction of any manifest errors of law or misapprehension of fact." *Ellenberg v. Board of Regents of the Univ. Sys. (In re Midland Mech. Contrs.)*, 200 B.R. 453, 456 (Bankr. N.D. Ga. 1996). That is Debtor's intended focus.

### Argument

I. **The finding that the ten-day letter "was delivered to Debtor" should be reconsidered, removed from the Order, or clarified for future proceedings.**

In the Order's "Background" section, the Court observed that:

> On January 21, 2021, APF sent a ten-day attorneys' fee letter[9] for both loans to Debtor. [APF Ex. 39]. ***The evidence showed that the letter was delivered to Debtor on January 22, 2021.*** The Managers were not immediately aware of the receipt of the correspondence. Thus, the bankruptcy case was filed on an emergency basis and preparations for filing were rushed.

Order at 6 (emphasis added and footnote removed).

The Debtor is seeking reconsideration of the bolded portion in advance of future claims allowance litigation regarding APF's entitlement to statutory attorneys' fees under O.C.G.A. § 13-1-11 and litigation regarding whether the bolded factual finding is binding or preclusive—by way of res judicata, collateral estoppel, the law of the case doctrine, or the like—as to the § 502 issue of the "receipt" date under O.C.G.A. § 13-1-11(a)(3) for starting the ten-day period.

First, Debtor has no audio recordings or written transcripts from the April proceedings. Further, counsel acknowledges from prior interactions with the Court during the trial that the Court appears to have kept meticulous notes about and summaries of the evidence. However, counsel's recollection of the evidence is that (i) APF submitted APF Exhibit 39 (which contains the ten-day letter (the "**Letter**") and a series of UPS delivery receipts as evidence of a Friday, January 22, 2021 receipt date) while (ii) Balbir Gosal testified that he and the Debtor did not

3

actually receive the Letter until Monday, January 25, 2021. Counsel further recollects that the testimony established that the stated delivery address for the Debtor on the Letter—5851 S. Virginia Street—is the generic address for the Super 8/Days Inn hotel in Reno, Nevada that the Debtor, YC Fernley Hotel LLC, and all of their affiliates claim as their corporate address.

Thus, the Debtor respectfully submits that the evidence—which was not fully developed by either party regarding a background factual matter that was not relevant or critical to the Court's ultimate ruling under §§ 1104 and 1112—only establishes that there is a material dispute about when the Debtor received the Letter, both as a matter of fact and as a matter of law for purposes of § 13-1-11. Specifically, the UPS delivery receipts establish, at most, that the Letter was delivered to 5851 S. Virginia Street at "Inside Deliv" and signed by "Ware." *See* Dkt. 134-1 at 6, 8, and 12. APF presented no evidence about the location of "Inside Deliv" at the Super 8, about who "Ware" is, about what authority, if any, Ware had to accept service on behalf of the Debtor or YC Fernley Hotel LLC, or overcoming Mr. Gosal's testimony that he—the person to whom the Letter was addressed—did not receive it until Monday, January 25, 2021.[1]

Additionally, neither party put O.C.G.A. § 13-1-11 squarely before the Court as a matter of law. It is not mentioned in APF's original or amended Motion. There is no briefing or oral argument on how Georgia courts interpret the "receipt" requirement in O.C.G.A. § 13-1-11 or what constitutes "receipt" for purposes of notice and due process. The Debtor submits that this particular "receipt" issue raises *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) considerations, whereby, under § 502, and only after proper notice, a complete evidentiary

---

[1] It is outside of the record, but apparently "Ware" was the front desk employee of the Super 8 motel who was on duty when the UPS driver dropped off three of the letters at the front desk on January 22, 2021.

4

record, and briefing, this Court would need to determine whether the manner in which APF sought to give notice of the Letter for purposes of a "receipt" occurring was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

Indeed, does dropping three letters at the front desk of a 153 room hotel with an employee of *another* entity start the ten-day clock under § 13-1-11 for the Debtor with potentially $1,287,924.37 consequences? It's hard to imagine that the Court intended its background observation about the Letter, in the context of merely explaining why the Debtor filed its bankruptcy case, to be such a consequential determination, particularly given that the Debtor received no notice that a § 502 allowance issue might be determined as a final matter of fact under §§ 1104 and 1112. Nevertheless, the Debtor is raising this as a reconsideration issue in advance of otherwise certain hotly-contested res judicata and related preclusion litigation.

Thus, the Debtor respectfully requests that the Court clarify its Order to state that (i) the evidence shows that there is a material dispute among the Debtor and APF about when the Debtor received the Letter for purposes of O.C.G.A. § 13-1-11; (ii) the issue of the receipt date for O.C.G.A. § 13-1-11 purposes is not properly before the Court, necessary for its adjudication of the narrow issues presented under §§ 1104 and 1112, or relevant to its examiner appointment; and (iii) all factual and legal issues and defenses regarding APF's entitlement to statutory attorneys' fees under O.C.G.A. § 13-1-11 are preserved for future adjudication.

**II.     The Court's amended ruling as to Ranjit Johal and the attorney client privilege should be reconsidered, clarified, or limited.**

In the Order, the Court, pursuant to F.R.C.P. 60(a), amended, in a narrow respect, its prior oral ruling that dealt with the application of the attorney-client privilege to discussions between (i) Aly Leon and counsel regarding the preparation of the Original Schedules and (ii) Ranjit Johal and counsel regarding the preparation of the Original Schedules. *See* Order at 2, n.4. Counsel's understanding of the original ruling and the amendment is that (i) the discussions with Ms. Leon about the Schedules were privileged under the "functional equivalent" doctrine while (ii) any discussions with Ranjit Johal (who the Court clarified was Baldev Johal's brother, not Balbir Gosal's brother) about the Schedules were not privileged, at least not under that doctrine.

With regard to the trial, the issue of privilege as to Ranjit Johal is moot because the trial is concluded. However, the ruling (which the Court upheld in the Order) could have implications for future discussions between Ranjit Johal and counsel, particularly given that he is involved in YC Atlanta and even more deeply and closely involved in YC Fernley Hotel LLC ("**YC Fernley**"), two debtors who will have a continuing need for legal advice from Stone & Baxter in their respective bankruptcy cases and about the interwoven claims APF has against both debtors.

Counsel's understanding of the privilege issue was that it was, as stated in Debtor's privilege brief, limited to whether "conversations between The Kishan Group (and its employees, agents, and representatives, including Ms. Leon) and Debtor's counsel about matters related to [Debtor's] Bankruptcy Case" are privileged. Dkt. 131 at 1. And while the Court ruled that Ms. Leon was the functional equivalent of an employee for privilege purposes, it ruled that Ranjit Johal (who is also an employee of The Kishan Group) was not the functional equivalent of an employee. The Debtor's issue for reconsideration is not whether Ranjit Johal is the functional

6

equivalent of an employee despite being an employee of The Kishan Group. Rather, the Debtor's issue is whether the Court's ruling also extended to Ranjit Johal's status as an owner of YC Fernley and an indirect owner of the YC Atlanta, a status that is not implicated by the issue that the parties were asked to brief and one that is not mentioned in the briefing.[2]

It is the Debtor's position that, regardless of whether Ranjit Johal should be treated as a functional equivalent of an employee of YC Atlanta, conversations with him and Stone & Baxter in connection with the bankruptcy cases and APF's claims against both Debtors are privileged for a number of reasons that have nothing to do with his involvement with The Kishan Group. First, as the Court found, YC Atlanta Hotel is "wholly owned by YC Fernley Hotel . . . which is owned by the Managers and Mr. Ranjit Johal . . . Mr. Johal's brother." Order at 2.

Second, the Debtor's Managers serve at the pleasure of YC Fernley (the sole owner of Debtor). In turn, YC Fernley is an entity that only acts through its Managers (Baldev Johal and Balbir Gosal), Managers who serve at the pleasure of Baldev, Balbir, and Ranjit (who are the three owners of YC Fernley). Thus, Ranjit Johal, through his ownership of YC Fernley, is at the very center of the management and decision making of both Debtors, who are closely-held entities that find themselves in bankruptcy on account of APF's claims against them. Indeed, Ranjit Johal was closely involved with YC Atlanta's decision to file, closely involved with YC Fernley's decision to file, and even signed the Consent Minutes authorizing YC Fernley's Chapter 11 filing (a filing which preceded the trial by over a week). That involvement was all on

---

[2] The Debtor mentioned Ranjit Johal once in its brief, listing him as being part of the core management team for the Debtor. APF did not mention Ranjit Johal at all in its privilege brief.

account of his ownership of YC Fernley. His deep day-to-day involvement, operationally, merely bolsters the contention that Ranjit Johal is more than just a passive direct and indirect owner.

Put another way, YC Fernley is in ultimate control of YC Atlanta with respect to its designated Managers; the incurrence of indebtedness to APF; the decision to file; and any future course of action taken in the YC Atlanta case (including its continuation). Similarly, Ranjit was a necessary party to the issuance of the alleged YC Fernley membership pledge to APF. And no single member of YC Fernley has authority, by himself, over YC Fernley and, thus, over YC Atlanta. For example, Ranjit and Balbir could, acting together without anyone else, fire the Managers of both Debtors, authorize dismissals, control settlement discussions and plan formulation for both Debtors, etc. Thus, Ranjit Johal occupies a critical role in the management and decision-making of both Debtors that entitles him to have privileged conversations with counsel about both Debtors, about their obligations to creditors, and their reorganization plans.

Thus, the Debtor respectfully requests that the Court clarify its Order to state that (i) Ranjit Johal's discussions with Stone & Baxter regarding issues in the related YC Atlanta and YC Fernley bankruptcy cases are privileged on account of his central, closely-held equity status (regardless of whether his day-to-day involvement through his The Kishan Group employment is not sufficient by itself to invoke the privilege) or, alternatively, (ii) the oral ruling does not preclude the parties from litigating, and preserves in a subsequent proceeding, the issue of whether his discussions with Stone & Baxter might be privileged on other grounds unrelated to his The Kishan Group employment, including the ground that he's an indirect and direct owner of the Debtors and that there is a common interest on account of APF's claims against both.

## Conclusion

For all of the above stated reasons, the Debtor respectfully requests that the Court reconsider its Order on the ten-day letter receipt date issue and Ranjit-related privilege issue.

Respectfully submitted this 3rd day of June, 2020.

|  | STONE & BAXTER, LLP |
|---|---|
|  | BY: |
|  | /s/ *David L. Bury, Jr.* |
|  | Ward Stone, Jr. |
|  | Georgia Bar No. 684630 |
|  | David L. Bury, Jr. |
|  | Georgia Bar No. 133066 |
|  | Thomas B. Norton |
|  | Georgia Bar No. 997178 |
| 577 Mulberry Street, Suite 800 |  |
| Macon, Georgia 31201 |  |
| (478) 750-9898; 478) 750-9899 (fax) | Counsel for Debtor |

wstone@stoneandbaxter.com
dbury@stoneandbaxter.com
tnorton@stoneandbaxter.com

## Certificate of Service

This is to certify that on this date I served a copy of the forgoing *Motion* using the CM/ECF system, which sent a link to the *Motion* to all CM/ECF parties.

This 3rd day of June, 2021.

/s/ *David L. Bury, Jr.*
David L. Bury, Jr.
Georgia Bar No. 133066

G:\CLIENTS\YC Atlanta Hotel, LLC\Motion to Convert\Motion for Reconsideration\Motion for Reconsideration (for upload 06.3.21).docx